```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF OKLAHOMA


SHERMAN LOLLIS,                    )
                                   )
                  Plaintiff,       )
                                   )
            v.                     )      No. CIV-05-501-S
                                   )
THE CITY OF EUFAULA, a             )
municipal corporation, MAYOR       )
BILL DAY, in his official          )
and individual capacity, CHIEF     )
LARRY OSMOND, in his official      )
and individual capacity,           )
                                   )
                  Defendants.      )
```

**ORDER**

Before the court for its consideration is Defendants' City of Eufaula, Bill Day, and Larry Osmond's Motion for Summary Judgment. The court rules as follows on the motion.

This lawsuit arises from the claims of Sherman Lollis ("plaintiff") regarding his employment with the City of Eufaula as a police officer. Plaintiff, who is African-American, alleges that following the October 2001 settlement of a lawsuit he brought against the City for racial discrimination, the City, Mayor Day, and Chief Osmond began retaliating against plaintiff for filing the lawsuit. Plaintiff asserts causes of action under 42 U.S.C. Sec. 1983 for deprivation of plaintiff's alleged property interest in his employment without procedural due process; for deprivation of plaintiff's liberty interest without due process; and for deprivation of plaintiff's equal protection rights. Plaintiff also asserts a claim under 42 U.S.C. Sec. 1981 for deprivation of his liberty interest. Plaintiff also asserts

1

four state law claims: a claim for violation of the Oklahoma Anti-Discrimination Act; a claim for intentional infliction of emotional distress; a claim for civil conspiracy; and a claim for slander *per se.*

### Findings of Fact

The court finds the facts as follows. In 2001 plaintiff filed a lawsuit in this court alleging racial discrimination by the City of Eufaula, the Eufaula Police Department, then mayor Bill Day, then-Police Chief Randy Johnston, then-Sergeant Charles Hammett and then-Sergeant Mark Goodwin. The lawsuit was settled in 2001.

On April 4, 2003, plaintiff's regular day off, he went to his brother's home near Taft, Oklahoma and drank beer. Plaintiff was driving home on highway 69 approaching Checotah, Oklahoma. The Checotah dispatcher received a phone call of a possible drunk driver approaching Checotah on highway 69. The dispatcher notified the police automobile units of the report. The caller provided the vehicle's tag number, MIK-906. A Checotah police officer overheard the dispatch and began looking for the vehicle. A vehicle matching the description and having tag MIK-906 passed the officer going south. As the officer was following the car he asked that the dispatcher verify the tag. The dispatcher reported over the radio the registered owner of the vehicle was Sherman Lollis of Rentiesville, Oklahoma.

The officer observed the vehicle. He noticed the vehicle was taking up both lanes of traffic. He stopped plaintiff. The officer noted that plaintiff had bloodshot eyes, slurred speech and a strong odor of alcohol. The officer also observed an open

container of beer in plaintiff's vehicle.  After answering a few questions the officer posed to him, plaintiff requested that "professional courtesy" be extended to him.  By this time another officer had arrived at the scene and observed plaintiff's slurred speech, bloodshot eyes and the odor of alcohol.  This officer also observed the open container of beer in the vehicle. The officers decided to extend "professional courtesy" to plaintiff.  They took plaintiff to the nearest truck stop and parked his truck.  One of the officers then drove plaintiff home.

One of the officers involved in the stop notified Eufaula Police Chief Larry Osmond that plaintiff had been taken home and had not been placed in jail. Chief Osmond requested the officers involved in the stop to prepare statements as to what happened.  They did so. Their statements were given to Chief Osmond.

The following Monday April 7, 2003, Chief Osmond held a meeting with plaintiff at the police department.  Also present were Lt. Charles Hammett and patrolman Wesley Dawson, a union representative.  During this meeting, Chief Osmond had plaintiff read the statements from the Checotah police officers.  Plaintiff admitted the incident had happened and that the police officers' versions of events were correct statements of what had happened that night.  Chief Osmond then presented plaintiff with a written reprimand and the statements provided to Chief Osmond by the Checotah police officers involved in the stop.  Plaintiff was put on one year probation and demoted from sergeant to patrolman for violation of the code of ethics and the City's policies.  Plaintiff did not contest the facts as stated by Chief Osmond.

Because the demotion of plaintiff involved a change in the pay rate, it had to be approved by the City Council.  Chief

Osmond prepared a memorandum to the Mayor and the City Attorney, who would present Chief Osmond's disciplinary recommendation to the City Council. That memo included all information obtained by Chief Osmond with regard to the stop of plaintiff by the Checotah police on April 4, 2003.

The City of Eufaula employee manual states that the decision of the City Council will be the final action in a termination. The City Council met on April 10, 2003, and received the prepared memo. Plaintiff addressed the City Council and had his union representative present. The City Council voted to approve the recommended discipline. On April 11, 2003, plaintiff submitted a grievance concerning the discipline to Police Chief Osmond. Chief Osmond denied the grievance. The police union subsequently declined to pursue the grievance on plaintiff's behalf. Plaintiff then requested an opportunity to again address the City Council at its regular meeting on May 5, 2003. Plaintiff appeared at the meeting and addressed the City Council in executive session. The City Council again upheld the discipline imposed.

## STANDARDS OF SUMMARY JUDGMENT

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c); See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party has the burden of demonstrating the absence of a genuine issue of fact. Celotex v. Catrett, 477 U.S. 317, 325 (1986). If this initial burden is satisfied, the nonmoving party

then has the burden of coming forward with specific facts showing there is a genuine issue for trial as to elements essential to the nonmoving party's case.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party cannot rest on the mere allegations of the pleadings, but must go beyond the pleadings and "set forth specific facts showing there was a genuine issue for trial as to those dispositive matters for which [it} carries the burden of proof." Applied Genetics v. First Affiliated Securities, 912 F.2d 1238, 1241 (10th Cir. 1990).

"A fact is 'material' only if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Thomas v. IBM, 48 F.3d 478, 486 (10th Cir. 1995) (quoting Anderson, 477 U.S. at 248).  In this regard, the court examines the factual record and reasonable inferences therefrom in the light most favorable to the nonmoving party.  Deepwater Invs. Ltd. v. Jackson Hole Ski Corp, 938 F.2d 1105, 1110 (10th Cir. 1991).  This court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.  With these standards in mind, the court turns to the merits of the defendants' motion.

## I. Fourteenth Amendment Property Interest
## Procedural Due Process Claim

In the case at bar, plaintiff argues he was denied due process when he was demoted from the rank of sergeant to

5

patrolman.  Plaintiff contends that he has a property interest in his rank as sergeant.  The Due Process Clause of the Fourteenth Amendment protects a state employee who demonstrates a protected property interest in his or her employment.  Consequently, the employee cannot be fired without procedural due process. <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 542 (1985). This principle requires "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment. <u>Board of Regents v. Roth</u>, 408 U.S. 564, 569-570 (1972).  A claim for deprivation of procedural due process requires the plaintiff to make two showings: (1) that he had a protected property interest in his employment and (2) that he was deprived of this property interest without the requisite process.

A plaintiff can show he had a protected property interest in his employment only if he can show that "he has a legitimate claim of entitlement to continued employment." <u>Dickeson v. Quarberg</u>, 844 F.2d 1435, 1437 (10th Cir.1988) (citation and internal quotation marks omitted). Whether an employee has a property interest in his employment is determined under state law. <u>Id</u>. at 1438 n. 5.  Thus, for the court to determine whether plaintiff has a protected property interest in his continued rank as sergeant under the Fourteenth Amendment the court must look to Oklahoma law.  In <u>Dill v. City of Edmond</u>, 155 F.3d 1193, 1206 (10th Cir. 1998) the court found that under Oklahoma law the collective bargaining agreement between a municipality and a police union can give rise to a protected property interest in continued employment or rank if the agreement provides that employees may be demoted or discharged only "for cause" subject to the grievance procedures of the agreement. In the case at bar, the Eufaula Police Department Operations Manual states:

6

> Termination of Employment-Permanent employees may be terminated for cause. Probationary employees may be terminated at any time during probation in accordance with the signed agreement.

It is undisputed that plaintiff was a permanent employee. Thus, he could only be terminated for cause. Accordingly, the court finds that plaintiff did have a property interest in his employment status from sergeant to patrolman. Defendants for purposes of the summary judgment motion admit plaintiff had a property interest in his rank as sergeant.

Next, the plaintiff must show he was deprived of this property interest without adequate process. One way a plaintiff can show he was not afforded adequate process is by demonstrating that his firing was not "preceded by notice and opportunity for a hearing appropriate to the nature of the case." Loudermill, 470 U.S. at 542. (citation omitted) "The key requirement is that the employee is entitled to a pre-termination opportunity to respond; more specifically, to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Benavidez v. City of Albuquerque, 101 F.3d 620, 627 (10th Cir.1996) (citations and quotation marks omitted). The hearing is not required to be elaborate and may be something less than a full evidentiary hearing. Loudermill at 545. In cases where there are required post-termination proceedings, the pre-termination hearing is not meant to resolve definitively the propriety of discharge, but only to determine whether there are reasonable grounds to believe the charges are true and the action correct. Id. at 546-547.

The court finds plaintiff cannot establish that his due process rights were violated. As was stated previously, the key

7

requirement is that the employee is entitled to notice of the charges against him and a pre-termination opportunity to respond to those charges. This means oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. In the case at bar, on the day of the demotion, the plaintiff met with Chief Osmond, Lt. Hammett and a police union representative. At that time Chief Osmond told plaintiff that he had received information that plaintiff had been stopped by the Checotah Police Department for drunk driving. Chief Osmond told plaintiff that he had been informed that plaintiff was too drunk to drive home, so the police drove him home. Chief Osmond also presented to plaintiff the statements from the officers involved. Plaintiff read the statements. Plaintiff acknowledged the truthfulness of the allegations and apologized for his behavior. Chief Osmond also presented plaintiff with a Notice of Reprimand. The form indicated the charge concerned a violation of policy which involved drugs and alcohol. It also set forth the specific violations of the City's administrative code and the personnel manual's ethics and public trust provisions which had been violated. It also stated that plaintiff had received an oral reprimand, 1 year probation and a demotion from sergeant to officer. Since the action required a change in pay, the matter could not be finalized until the City Council approved it. It is undisputed the demotion was not final until the City Council approved it. At their April meeting plaintiff met with and addressed the City Council in executive session regarding his position as to the disciplinary action. The City Council approved the proposed disciplinary action. Plaintiff then filed a grievance regarding the action which was subsequently denied. The union chose not to appeal the grievance. Plaintiff then addressed the City Council a second time regarding the

8

disciplinary action.  The City Council decided not to reverse its previous decision regarding the disciplinary action taken against plaintiff.

Plaintiff was clearly given notice of the charges against him both orally and in writing.  He also was presented by the Chief of Police and the City Council all the evidence gathered against him.  Finally, he was given several opportunities to tell his side of the story.  Plaintiff was actually given three hearings.  The first occurred with the Chief in his office at the time of the demotion.  At this hearing, plaintiff was given an opportunity to tell his version of events.  He agreed the facts as stated by the Chief were true. The second hearing occurred before the City Council voted to approve the disciplinary action.  Plaintiff had an opportunity to address the council regarding his version of events.  The third hearing occurred at the May City Council meeting.  Accordingly, the court finds the plaintiff was granted adequate process. <u>Powell v. Mikulecky</u>, 891 F. 2d 1454, 1458-60 (10th Cir. 1989).

Plaintiff has argued that he states a due process claim if he can establish that he has a property interest in employment and is terminated by an employer in an arbitrary and caprcious manner.  Plaintiff also argues that since his fundamental right to be treated equally without regard to race is implicated, defendants must show a compelling state interest justifies the deprivation.  Plaintiff cites no case law to support this standard and the court cannot find law to support this standard.  Accordingly, the court believes the proper standard is if the plaintiff has a property interest in his continued rank as sergeant and whether he was deprived of this right without adequate process.  Therefore, plaintiff's Fourteenth Amendment

9

property interest procedural due process claim must fail.

## II. FOURTEENTH AMENDMENT EQUAL PROTECTION CLAIM

Plaintiff has alleged the defendants have violated his Fourteenth Amendment equal protection rights with regard to the terms, conditions and privileges of his employment by altering plaintiff's employment and by retaliating against plaintiff for protected activity. Plaintiff alleges that certain acts of discrimination and retaliation by defendants denied him equal protection of the laws. "The Supreme Court has recognized successful equal protection claims brought by a 'class of one,' where [a] plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and...there is no rational basis for the difference in treatment." <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000). In the case at bar, plaintiff cannot establish that similarly situated individuals were treated less leniently than he was. Plaintiff testified he was not aware of any officer who had been stopped for drunken driving previous to him. Thus, plaintiff presented no evidence there were other officers similarly situated. The testimony revealed that other officers after being reprimanded often resigned. Thus, there is absolutely no evidence that plaintiff was treated more harshly than other similarly situated individuals. Accordingly, defendants' motion for summary judgment on this claim is hereby granted.

## III. Fourteenth Amendment Procedural Due Process Liberty Interest Claim

Plaintiff has alleged that some or all of the defendants caused an incident report regarding plaintiff to be made and that

the incident report was defamatory or false and called into question plaintiff's morality, integrity and fitness as a police officer.  Plaintiff claims that this action caused a deprivation of his liberty interest without due process in violation of 42 U.S.C. Sec. 1983.  The Tenth Circuit Court of Appeals has recognized that an individual's reputation is a protected liberty interest.  <u>Stidham v. Peace Officers Standards and Training</u>, 265 F.3d 1144, 1153 (10th Cir. 2001).  However, "defamation, standing alone, [is] not sufficient to establish a claim for deprivation of a liberty interest." <u>Renaud v. Wyoming Dep't of Family Servs.</u>, 203 F.3d 723, 726-27 (10th Cir.2000). A four part test is used to determine whether statements infringe upon a liberty interest in one's good name and reputation as it affects one employment. <u>Stidham</u>  at 1153. To establish a claim for deprivation of a liberty interest, the statements: 1) must impugn the good name, reputation, honor or integrity of the employee; 2) must be false; 3) must occur in the course of terminating the employee or must foreclose other employment opportunities; and 4) must be published. <u>Id</u>. In order for an employee to make a successful liberty deprivation claim, he must show publication of information which was false and stigmatizing.  <u>Graham v. City of Oklahoma City</u>, 859 F.2d 142, 145 n. 2 (10th Cir. 1988).  The "publication" must be made to the public.  If the publication is not made outside of the government, plaintiff cannot meet the publication requirement.  <u>Asbill v. Choctaw Nation of Oklahoma</u>, 726 F.2d 1499, 1503 (10th Cir. 1984).

In the case at bar, plaintiff cannot meet the four part test.  First, plaintiff acknowledges the incident report was not false. He acknowledges the charges against him are true. Second, plaintiff has alleged the defendants published the contents of the reprimands. He testified in his deposition that he believes

11

Chief Osmond published the facts concerning his stop to other police officers. There is absolutely no evidence that publication of the reprimand occurred outside of the police department or City Council. "Such intra-government dissemination, by itself, falls short of the Supreme Court's notion of publication: "to be made public" see <u>Bishop v. Wood</u>, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976)". <u>Asbill</u> at 1503 . There is absolutely no evidence that the facts found in the reprimand were false or that there was a publication of the reprimand outside of the city government. Accordingly, plaintiff's claim for a violation of his Fourteenth Amendment procedural due process liberty interest claim must fail.

## **IV. 42 U.S.C. Sec. 1981 Claim**

Plaintiff claims that defendants have violated his liberty interest rights under 42 U.S.C. Sec. 1981 by asserting that his demotion and loss of benefits were a constitutionally protected right and the enjoyment of his benefits, privileges, terms and conditions of the employment relationship were impaired by defendants. The elements of a plaintiff's case are the same under both Title VII and 1981. <u>Drake v. City of Fort Collins</u>, 927 F.2d 1156, 1162 (10th Cir.1991). The allocation of burdens under Title VII applies to proving intentional discrimination under 1981 as well. <u>Durham v. Xerox Corp.</u>, 18 F.3d 836, 839 (10th Cir.), <u>cert. denied</u>, 115 S.Ct. 80 (1994). Only intentional discrimination may violate section 1981. <u>General Bldg. Contractors Ass'n v. Pennsylvania</u>, 458 U.S. 375, 391 (1982). Plaintiff must meet his initial burden of establishing a prima facie case of racial discrimination by presenting evidence of membership in a protected class, that he suffered an adverse employment action, and that similarly situated employees were

treated differently.  Trujillo v. University of Colorado Health Science Center, 157 F. 3d 1211, 1215 (10th Cir. 1998).  Plaintiff has failed to come forward with any evidence that he was treated differently than similarly situated employees. In his response brief plaintiff simply says that Lt. Hammett's testimony establishes that plaintiff was treated differently from similarly situated individuals on the basis of race.  However, Lt. Hammett's testimony says no such thing.  He merely testifies that in the 15 years he has been on the force a police officer has never been stopped for drunk driving and no one has been previously demoted.  There is not one shred of evidence that plaintiff was treated differently than other officers similarly situated.  Plaintiff's conclusory statements regarding racial discrimination are insufficient to overcome a valid motion for summary judgment on this issue.  Mitchell v. City of Moore, Oklahoma 218 F.3d 1190 (10th Cir. 2000). Without a shred of evidence the court cannot allow this claim to proceed.  Accordingly, the court grants summary judgment on plaintiff's 42 U.S.C. Sec. 1981 claim.

### V.   State Law Claims

The court has resolved all of plaintiff's federal law claims. All of plaintiff's remaining claims are based in state law.  The Tenth Circuit Court of Appeals has held that when federal claims are resolved prior to trial, the district court should usually decline to exercise jurisdiction over state law claims and allow plaintiff to pursue them in state court.  Ball v. Renner, 54 F. 3d 664, 669 (10th Cir. 1995) and 28 U.S.C. § 1367 (c)(3) (stating that when all federal claims are dismissed, district court may decline to exercise jurisdiction over remaining state claims.) Accordingly, the court declines to

13

exercise jurisdiction over the remaining state law claims. Therefore, the court hereby dismisses without prejudice this portion of the case.

Accordingly, the court grants the defendants' motion for summary judgment and this case is dismissed in its entirety.

**IT IS SO ORDERED** this 14th day of June, 2006.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma